```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
NEW CINGULAR WIRELESS PCS, LLC
d/b/a AT&T Mobility,
                                                                    REPORT AND
                                        Plaintiff,                  RECOMMENDATION
        -against-
                                                                    20-CV-3555 (JS)(SIL)
THE PLANNING BOARD OF THE TOWN
OF EAST HAMPTON, THE TOWN OF
EAST HAMPTON, THE TOWN OF EAST
HAMPTON ARCHITECTURAL REVIEW
BOARD, and THE TOWN OF EAST
HAMPTON BUILDING DEPARTMENT,

                                        Defendants,
---------------------------------------------------------------x
```

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this Telecommunications Act action, on referral from the Honorable Joanna Seybert for report and recommendation, is proposed intervenor defendants' Peter Corbett, Nicole Corbett, Valerie Coster, Karen Simon, Matthew Sargenti and Christopher Katsaros (collectively "Proposed Intervenors") motion to intervene. *See* Notice of Motion for Intervention ("Proposed Intervenors' Motion"), Docket Entry ("DE") [40]; Memorandum of Law in Support of Motion for Intervention ("Proposed Intervenors' Mem."). By way of Complaint dated August 6, 2020, New Cingular Wireless PCS, LLC d/b/a AT&T Mobility ("Plaintiff" or "AT&T") commenced this action against the Planning Board of the Town of East Hampton ("Planning Board"), the Town of East Hampton (the "Town"), the Town of East Hampton Architectural Review Board (the "Architectural Review Board") and the Town of East Hampton Building Department (the "Building Department,"

1

collectively "Defendants") alleging that Defendants' failure to approve AT&T's January 26, 2015 application for a wireless facility at St. Peter's Chapel, 465 Old Stone Road, East Hampton (the "Chapel"), violated the Telecommunications Act of 1996 ("TCA") 47 U.S.C. § 332(c)(7). *See* Complaint ("Compl.") DE [1]. On February 11, 2022, Judge Seybert so ordered Plaintiff's and Defendants' proposed settlement agreement ("Settlement Agreement"). *See* DE [29]. Thereafter, the Proposed Intervenors filed a letter motion under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 24 to intervene as of right, or, in the alternative, for permissive intervention, on March 21, 2022, *see* DE [30], which both Plaintiff and Defendants oppose. *See* Proposed Intervenors' Mem.; Memorandum of Law in Opposition to Motion Intervene ("Defs.' Opp."), DE [37]; Brief in Support of Plaintiff's Opposition to Motion to Intervene ("Pl. Opp."), DE [38]; Reply Memorandum of Law In Further Support of Motion for Intervention, ("Proposed Intervenors' Reply"), DE [43]. For the reasons set forth below, the Court respectfully recommends that the Proposed Intervenors' Motion be granted.

I.   BACKGROUND

A. Relevant Facts

The following facts are taken from the Complaint and the parties' submissions and are assumed true for the purposes of this motion.

Plaintiff is a provider of personal wireless services pursuant to licenses issued by the Federal Communications Commission (the "FCC"), and it provides these services "through an interlocking network of line-of-sight transceiver facilities that permit the efficient reuse of frequencies" allocated by the FCC. Compl. ¶¶ 10-11. The

radio signals used by AT&T to provide services can be disrupted by topography, foliage and man-made structures and have certain range limitations.  *Id.* ¶ 12.  On October 22, 2015, AT&T applied to construct a personal wireless facility at the Chapel, which is located in a wooded area of the Springs section of East Hampton that consists of single-family homes, to remedy a service gap.  *Id.* ¶¶ 13, 16.  Defendants are respectively local government entities or instrumentalities duly constituted and established pursuant to New York law, authorized to review these applications pursuant to local zoning regulations, and have offices at 159 and 300 Pantigo Place, East Hampton, New York.  *Id.* ¶¶ 3-5.  Proposed Intervenors are individual property owners whose respective homes are situated "in close proximity" to the proposed tower that AT&T seeks to construct.  Andrew J. Campanelli Declaration ("Campanelli Decl."), DE [41] ¶ 22; *see also* Campanelli Decl. Exhibit ("Ex.") D.

In its initial application, AT&T proposed to replace the Chapel's belfry with a new, taller steeple because the current one is too low to provide the sufficient height needed to mount antennas for reliable services.  *Id.* ¶ 20.  After reviewing the application, the Planning Board, by letter dated December 10, 2015, requested that AT&T limit any facility at the Chapel to the height of the existing belfry.  *Id.* ¶ 22. On December 21, 2015, the Architectural Review Board suggested that the antennas be placed within a campanile, a stand-alone bell tower, set back farther from the street, and on June 3, 2016, AT&T submitted a revised proposal in response to this guidance.  *Id.* ¶¶ 23-24.  After review, the Planning Board recommended three other

3

options: (i) relocate the campanile, (ii) consider a shorter steeple, or (iii) mount the antennas on a 50-foot-tall pole. *Id.* ¶ 25. On October 13, 2016, AT&T provided the Planning Board with photo simulations of a campanile, relocated to the northern portion of the property behind the Chapel, and a 50-foot pole with externally mounted antennas. *Id.* ¶ 26. After a December 7, 2016 meeting, the Planning Board replied by letter that a majority of its members preferred the campanile over the 50-foot-tall pole, and asked for input from the Architectural Review Board. *Id.* ¶ 27. AT&T submitted an updated application on December 15, 2017 for a campanile on the northern portion of the Chapel property, and the deadline that governed a decision on the application, or "Shot Clock," started running from this submission, although no further details are alleged regarding how the Shot Clock works. *Id.* ¶ 28.

Plaintiff and Defendants had meetings discussing the application on February 7, February 28 and March 1, 2018, but were unable to reach a consensus, so AT&T agreed to toll the Shot Clock. *Id.* ¶¶ 29-30. On April 3, 2018, AT&T requested that the Zoning Board grant a Natural Resources Special Permit for the variances needed, and that the Architectural Review Board approve the Chapel facility. *Id.* ¶¶ 31-32. In May 2018, the Planning Board advised they had not reached a decision, and the parties continued their discussions. *Id.* ¶¶ 33-34.

On May 24, 2019, Defendants re-activated the December 15, 2017 application, which restarted the Shot Clock on May 28, 2019, the next business day. *Id.* ¶ 34. Several meetings between Defendants occurred in June and July of 2019, but they still failed to reach a consensus. *Id.* ¶¶ 35-39. On October 15, 2019, AT&T agreed to

4

further extend the Shot Clock until January 17, 2020 provided that a hearing be scheduled in November 2019. *Id.* ¶ 39. During a November 19, 2019 hearing, the parties discussed various options including potential environmental impacts, but failed to reach an agreement. *Id.* ¶¶ 40-42. On January 17, 2020, AT&T agreed to extend the Shot Clock again, and on February 11, 2020, the Zoning Board expressed its intent to approve a Natural Resources Special Permit for the Chapel facility, and grant minimal wetlands setback and fall-zone variances, subject to the Planning Board's grant of a "Negative Declaration" under New York's State Environmental Quality Review Act ("SEQRA") that the Chapel Facility would not have any significant adverse environmental impact. *Id.* ¶¶ 43-44.

On February 26, 2020, the Planning Board held a meeting to consider whether to grant the required Negative Declaration. *Id.* ¶ 46. On March 4, 2020, the Planning Board issued a Negative Declaration under SEQRA, finding the proposal would not result in any significant environmental impacts, but a Planning Board member expressed his intent, as a citizen, to submit materials analyzing the desirability of alternate sites. *Id.* ¶¶ 47-48. The following day, the New York Department of Environmental Conservation granted a Freshwater Wetlands Permit for the Chapel facility, finding that it would have no material impact on adjacent wetlands. *Id.* ¶ 49. On March 10, 2020, the Zoning Board, following the Planning Board's issuance of the required Negative Declaration, approved the determination granting the requested minimal variances and the Natural Resources Special Permit for the Chapel facility. *Id.* ¶ 50.

Due to the Covid-19 pandemic, the March 2020 and May 2020 meetings were adjourned, and AT&T agreed to extend the Shot Clock until June 5, 2020. *Id.* ¶¶ 51-53. On May 20, 2020, AT&T made a supplemental submission including an analysis of the greater visual impact of a 70-foot pole with externally mounted antennas compared to a 50-foot-tall campanile with concealed antennas, and also addressing the alternate sites suggested and other issues raised during the course of the meetings. *Id.* ¶ 54. On June 3, 2020, the Planning Board held a public hearing on the Chapel facility, and one resident submitted drawings challenging the accuracy of AT&T's photo-simulation renderings of the campanile, and the Board agreed to hold the record open for thirty days. *Id.* ¶ 55. On June 5, 2020, AT&T again agreed to extend the Shot Clock, in anticipation of a July 2020 Planning Board decision. *Id.* ¶ 56.

On July 2, 2020, AT&T made a supplemental submission responding to issues raised at the June 3, 2020 hearing and incorporated its May 20, 2020 submission. *Id.* ¶ 57. On July 8, 2020, the Planning Board voted and denied the application for special permit and site plan approval, and the Shot Clock expired. *Id.* ¶¶ 58, 60. On July 22, 2020, the Planning Board adopted its findings and determination denying special permit and site plan approvals for the Chapel facility. *Id.* ¶ 61.

**B. Procedural History**

Based on the above, on August 6, 2020, AT&T filed the instant action against Defendants for: (i) failing to provide substantial evidence supporting the Planning Board's denial of the Chapel facility application under 47 U.S.C. § 332(c)(7)(B)(iii);

6

(ii) prohibiting the provision of covered services in the area under 47 U.S.C. § 332(c)(7)(B)(i)(II) and 47 U.S.C. § 253(a); (iii) failing to meet their duty under 47 U.S.C. § 332(c)(7)(B)(ii) to render zoning, land use and other state or local permitting decisions relating to wireless facility siting requests within a reasonable period of time; and (iv) rendering a decision that was arbitrary, capricious, unreasonable and an abuse of discretion in violation of New York Civil Practice Law & Rules ("NYCPLR") Article 78.  *See* Compl.  Defendants filed their Answer on September 15, 2020, and discovery followed.  *See* DEs [8], [12].[1]

On July 15, 2021, the parties reported that they had settled the matter in principle but were still in the process of executing the agreement.  *See* DE [25]. According to the parties, Defendants approved the Settlement Agreement at public sessions of the boards, and it was executed by the required representatives on December 17, 21 and 29, 2021 for the Planning Board, Town Board and Architectural Review Board, respectively.  *See* Defs.' Opp. at 4; Pl. Opp. 4-5.

On February 8, 2022, the Chapel was deemed eligible for inclusion in the State and National registers of Historic Places by the Commissioner of the New York State Department of Parks, Recreation and Historic Preservation.  Campanelli Decl. ¶ 10. This was not considered by the parties in the deliberation and execution of the Settlement Agreement.  According to Plaintiff, historic preservation review of wireless facilities is completed by the FCC and governed by the Nationwide

---

[1] This case was initially assigned to Magistrate Judge Shields followed by Magistrate Judge Tomlinson and Magistrate Judge Wicks.  *See* DEs [15], [45]; November 19, 2021 Electronic Order.  This Court was assigned to the case on July 11, 2022.  *See* July 11, 2022 Electronic Order.

7

Programmatic Agreement for Review of Effects on Historic Properties for Certain Undertakings, FCC 04-222 (September 2004) ("NPA"). Pl. Opp. at 5-6. Under the NPA, if the issue is not resolved during lower levels of review, the FCC Commissioner will adopt a plan to avoid, minimize or mitigate any adverse effects. *Id.* As a result, AT&T claims that this process has begun although the parties provide no further details. *See id.*

On February 10, 2022, the parties filed their proposed settlement, which Judge Seybert approved and entered on February 11, 2022 and ordered the parties to file a status report on or before May 12, 2022 advising the Court of their implementation of the Settlement Agreement. DE [29]. In short, the Settlement Agreement requires AT&T to submit a detailed application for a monopole containing the information that the Planning Board, Architectural Review Board and Zoning Board of Appeals identified, and they would need to resolve the monopole application within 60 days. *See* Defs.' Opp. at 3-4; Pl. Opp. at 4. If, within that time, these three boards approve the monopole, AT&T will construct it and abandon its claim for approval of the campanile. Defs.' Opp. at 4; Pl. Opp. at 4. If Defendants fail to approve the monopole, the Settlement Agreement permits AT&T to construct the campanile. Defs.' Opp. at 4; Pl. Opp. at 4. The result, according to the parties, is that AT&T is assured of a facility, Defendants get to choose its form, and the public will benefit from improved wireless services. Defs.' Opp. at 4; Pl. Opp. at 4.

On March 21, 2022, the Proposed Intervenors filed a letter motion to intervene, which the parties then fully briefed and filed on June 24, 2022. *See* Proposed

8

Intervenors' Mem.; Defs.' Opp.; Pl. Opp. The Proposed Intervenors are local residents with homes in close proximity to the proposed site and argue that they would sustain adverse aesthetic impacts and reduction in the value of their homes under the terms of the Settlement Agreement. *See* Proposed Intervenors' Mem. at 3. Moreover, they claim that their interests were not adequately protected by Defendants, so they should be allowed to intervene to protect their property rights recognized under local zoning laws. Campanelli Decl. ¶¶ 27-29. Finally, they argue that Plaintiff did not join the Proposed Intervenors as defendants, serve them with a copy of the complaint or request a waiver, and so, they only learned of this matter through "word of mouth," although they do not specify the particular date in which they received notice. Proposed Intervenors' Mem. at 7. They contend, however, that they immediately scheduled appointments to consult with and retain counsel, filed a NYCPLR Article 78 petition in Suffolk County Supreme Court on March 11, 2022, and filed their letter motion to intervene on March 21, 2022. *Id.*; *see also* DE [30]; Defs.' Opp. Ex. 7. They attach exhibits to the motion including a proposed Answer, Counterclaims and Cross Claims seeking declaratory relief and a permanent injunction for violations of Zoning Code §§ 255-1-11(M)(4) and 255-1-11(M)(6). *See* Campanelli Decl. Exs. A-E. Plaintiff and Defendants oppose the Motion. *See* Pl. Opp.; Defs.' Opp. For the reasons set forth below, the Court recommends granting the Proposed Intervenors' Motion.

## II.   LEGAL STANDARD

### A. Intervention as of Right

Federal Rule of Civil Procedure 24(a)(2), governing intervention as of right, provides in relevant part:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). A motion to intervene as of right will be granted where the movant demonstrates: (1) timeliness of the motion; (2) the movant's interest relates to the property or transaction that constitutes the subject of the action; (3) absent intervention, the movant's ability to protect its interest will be impaired or impeded; and (4) the parties to the action do not adequately represent the movant's interest. *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006); *see also Friends of the E. Hampton Airport, Inc. v. Fed. Aviation Admin.*, No. 15-CV-0441(JS)(ARL), 2016 WL 792411, at *4 (E.D.N.Y. Feb. 29, 2016). "Failure to satisfy any one of these requirements is a sufficient ground to deny the application." *In re Pandora Media, Inc.*, No. 12-CV-8035, 2013 WL 6569872, at *5 (S.D.N.Y. Dec. 13, 2013) (internal quotation marks and citation omitted; emphasis in original).

The test is "flexible," and courts "generally look at all the factors together rather than focus narrowly on a single one." *Basciani Foods, Inc. v. Mid Island Wholesale Fruit & Produce, Inc.*, No. 09-CV-4585, 2011 WL 17524, at *3 (E.D.N.Y. 2011). "In reviewing a motion to intervene, the Court accepts the motion's non-conclusory allegations as true." *Friends of the E. Hampton Airport, Inc.*, 2016 WL 792411, at *4 (citing *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009)). Finally, the motion "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense

10

for which intervention is sought." Fed. R. Civ. P. 24(c). District courts have considerable discretion in deciding motions to intervene under Rule 24(a)(2). *See Basciani*, 2011 WL 17524, at *3.

### B. Permissive Intervention

Permissive intervention is addressed under Fed. R. Civ. P 24(b), which provides in relevant part: "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Court's permissive intervention analysis is informed by the same four factors considered in connection with motions for intervention as of right. *Certified Multi-Media Solutions, Ltd. v. Preferred Contractors Ins. Co. Risk Retention Group LLC*, No. 14-CV-5227, 2015 WL 5676786, at *6 (E.D.N.Y. Sep. 24, 2015). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### III. DISCUSSION

The Proposed Intervenors seek intervention as of right under Rule 24(a)(2), and in the alternative, permissive intervention under Rule 24(b). *See generally* Proposed Intervenors' Mem.[2] Applying the standards outlined above and for the reasons set forth below, the Court concludes that the Proposed Intervenors meet the standard under Rule 24(a)(2) to intervene in this case as of right and respectfully recommends granting their motion.

---

[2] The Proposed Intervenors filed a proposed Answer to the Complaint, Counterclaims and Cross Claims satisfying Rule 24(c). *See* Campanelli Decl. Ex. E.

11

### A. Standing

Initially, intervenors as of right under Rule 24(a)(2) "must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Cross Sound Cable Co., LLC v. Long Island Lighting Co.*, No. 21CV2771KAMARL, 2022 WL 247996, at *8 (E.D.N.Y. Jan. 27, 2022) (quoting *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651, 198 L.Ed.2d 64 (2017)). To establish standing, a party "must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Backus v. Town of Charlotte*, 75 F. App'x 820, 821 (2d Cir. 2003); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992).

Here, the Proposed Intervenors have standing to pursue the relief they seek, namely to vindicate economic interests in their properties. Their alleged injury is that the construction of a 50-to-70-foot monopole or campanile in close proximity to their homes will reduce their property values, which is recognized under local zoning rules. *See* Proposed Intervenors' Mem. at 2. This injury is imminent as AT&T and Defendants have entered into a Settlement Agreement which provides that a cell tower will be built at the Chapel whether as a monopole or campanile. *See* DE [29]. While Defendants argue that the injury is speculative and they fail to provide credible data as to the economic injury, Defs.' Opp. at 11-13, the Court accepts the Proposed Intervenors' non-conclusory allegations as true noting that they cite to various studies on this issue and argue that they would further establish the impact on their

12

property values with probative evidence in a motion to vacate the consent order. Campanelli Decl. ¶ 25; Proposed Intervenors' Mem. at 3; Proposed Intervenors' Reply at 5-6. Moreover, rather than seek relief under the TCA, as Plaintiff and Defendants suggest, the Proposed Intervenors' Answer, Counterclaims and Cross Claims, demonstrate they seek relief under the local zoning codes specific to a reduction in property values, and this proposed pleading is different from the Answer filed by Defendants who asserted no counterclaims. *Compare* Campanelli Decl. Ex. E *with* DE [8]. Accordingly, the Court concludes that the Proposed Intervenors have standing to pursue the relief they seek.

### B. Timeliness

Courts evaluate the timeliness based on: "'(1) how long the applicant had notice of the interest before it made a motion to intervene; (2) prejudice to existing parties resulting from the delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.'" *Sea Tow Servs. Int'l, Inc. v. Tampa Bay Marine Recovery, Inc.*, No. 20-CV-2877(JS)(SIL), 2021 WL 327653, at *3 (E.D.N.Y. Feb. 1, 2021) (quoting *Keybank, Nat'l Ass'n v. Quality Payroll Sys., Inc.*, No. 06-CV-3013, 2007 WL 9710295, at *5 (E.D.N.Y. 2007)) (citations omitted). The determination of whether a motion to intervene is timely must be "evaluated against the totality of the circumstances before the court." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (citation and internal quotation marks omitted).

13

The Court concludes that the Proposed Intervenors' motion is timely. The Proposed Intervenors were not joined as defendants, and they state that they did not hear about this litigation until they learned of the Settlement Agreement through "word of mouth." Proposed Intervenors' Mem. at 7. While the exact timing as to when they had notice of the case is not indicated, the Proposed Intervenors immediately consulted with and retained counsel, filed a NYCPLR Article 78 petition in the New York Supreme Court, Suffolk County on March 11, 2022 and filed their initial letter motion to intervene in this Court on March 21, 2022. *Id.*; *see also* DE [30]; Defs.' Opp. Ex. 7. While Plaintiff and Defendants contend that the proper time to intervene began when the action was filed in August 2020 rather than when the Settlement Agreement was entered in February 2022, *see* Pl. Opp. at 7-8; Defs.' Opp. at 8-9, the filing of the action does not establish notice. Further, while Defendants claim that they held public sessions of the respective boards, on December 17, 21 and 23, 2021, which the Proposed Intervenors dispute, *see* Campanelli Decl. ¶ 9 n.1, regarding the Settlement Agreement such that this would constitute constructive notice, *see* Pl. Opp. at 4-5; Defs.' Opp. at 4, the Proposed Intervenors' state court petition was filed less than three months later on March 11, 2022, and their letter motion was filed in this Court ten days after that on March 21, 2022. *See* Defs.' Opp. Ex. 7; DE [30]. Moreover, AT&T's initial application for the cell tower was ultimately denied by Defendants, so it does not necessarily follow that the Proposed Intervenors should have intervened when the litigation was filed in August 2020. *See* Defs.' Opp. at 9-10.

14

Finally, prejudice to the Proposed Intervenors in denying their motion outweighs prejudice to existing parties resulting from the delay of this lawsuit.  If their motion is denied, the Proposed Intervenors' interests are extinguished, and a cell tower will be built at the Chapel.  *See Industrial Commc'ns & Elecs., Inc. v. Town of Alton, N.H.*, 646 F.3d 76, 80 (1st Cir. 2011) ("the consent decree, if entered as a judgment by the federal court, eliminates [intervenors'] rights.").  If the motion is granted, however, while some delay may result, the relief negotiated in the Settlement Agreement may still be obtained, at least in some form.  Accordingly, the Court concludes that the Proposed Intervenors' Motion is timely.

### C. Legal Interest

Next, to intervene as of right, the proposed intervenor must have more than a "remote or contingent" interest in the transaction at issue, meaning it must establish an interest that is "direct, substantial, and legally protectable." *Nu-Chem Labs., Inc. v. Dynamic Labs., Inc.*, 96-CV-5886 (JS), 1998 WL 35180780, at *3 (E.D.N.Y. May 19, 1998) (citing *New York News, Inc. v. Kheel*, 973 F.2d 484, 486 (2d Cir. 1992)).  An interest that is "contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Washington Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990).

Here, the Proposed Intervenors' interests relate to the property that constitutes the subject of the instant action.  While the Proposed Intervenors' aesthetic impact argument fails, *see Extenet Sys., LLC v. Village of Kings Point*, No. 21-CV-5772 (KAM)(ST), 2022 WL 1749200, *9 (E.D.N.Y. May 31, 2022) (citing

15

*Omnipoint Commc'ns, Inc. v. City of White Plains*, 202 F.R.D. 402, 403 (S.D.N.Y. 2001) (denying owner of property adjacent to proposed site for wireless facility leave to intervene, holding that the property owner that claimed that the facility "will ruin the view from its sanctuary" did not have a protectable interest in the subject or property of the action)), they also seek to protect against potential economic harm to their properties, which are in close proximity to the site of the proposed tower. *See* Proposed Intervenors' Mem. at 8; Campanelli Decl. ¶¶ 22-26, Ex. D. While Defendants counter that the Proposed Intervenors' rights or interests in the matter are common to all Town taxpayers and citizens, *see* Defs.' Opp. at 11, the Proposed Intervenors contend their property value will be reduced between 15 to 30 percent citing to various studies on this issue and argue that they would further establish the impact on their respective property values with probative evidence in a motion to vacate the consent order. Campanelli Decl. ¶ 25; Proposed Intervenors' Mem. at 3; Proposed Intervenors' Reply at 5-6.

Moreover, the Settlement Agreement provides that either a 50-to-70-foot monopole or campanile will be placed at the Chapel cite, making the injury certain rather than contingent. *Cf. Extenet Sys., LLC v. Village of Kings Point*, 2022 WL 1749200, at *9 (proposed intervenors' "unsupported assertions" did not warrant a finding that their homes will "suffer substantial, or any, losses in monetary value" as a result of the proposed small cells, roughly two to three feet in height, and equipment boxes that are approximately three cubic feet in volume, being located over 100 feet

16

away). Accordingly, the Court concludes that the Proposed Intervenors have a legally protectable interest in the transaction that is subject of this case.

### D. Impairment of Legal Interest

The third requirement for intervention as of right is satisfied where prospective intervenors demonstrate "that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest." *Pitney Bowes, Inc.*, 25 F.3d at 69-70. While the TCA does not allow for a private right of action, *Extenet Sys., LLC v. Village of Kings Point*, 2022 WL 1749200, at * 10 (citing *Drago v. Garment*, 691 F. Supp. 2d 490, 496 (S.D.N.Y. 2010)) (other citations omitted), determining whether a legally operative judgment, such as a consent decree, that potentially overrides state law and thereby eliminates a proposed intervenor's rights is appropriately raised in the court that is considering the decree. *Industrial Commc'ns & Elecs., Inc.*, 646 F.3d at 80 ("If the decree is not valid, the most appropriate time and place to raise that issue is now and in the court that is considering the decree.") (citation omitted).

Here, the Proposed Intervenors' interests, namely their property rights under local zoning rules, are impeded by performance under the Settlement Agreement. The Agreement overrides these rights providing that a 50-to-70-foot cell tower will be built at the Chapel in any scenario. Rather than seek an "entitlement" or "right" to the denial of the application or other relief under the TCA, as the parties contend, *see* Pl. Opp. at 9-11; Defs.' Opp. at 12-13, 15, the proposed Answer, Counterclaims and Cross Claims demonstrate that the Proposed Intervenors seek to defend the initial

17

determination of Defendants' denial of AT&T's application and ultimately vacate the Settlement Agreement which overrides their economic property interests. *See* Campanelli Decl. Ex. E at 13-15; Proposed Intervenors' Reply at 6-7. Moreover, the Proposed Intervenors allege that AT&T failed to meet local zoning provisions, and the denial of the application was valid in that they failed to provide evidence to establish the actual location of purported gaps in service and why or how its proposed tower is the best and/or least intrusive means in remedying those gaps. Campanelli Decl. ¶¶ 12-15, 18-21. They also argue that the Chapel is recently eligible for inclusion in the State and National registers of Historic Places, which was not contemplated in the Settlement Agreement and inconsistent with local zoning regulations. *See* Campanelli Decl. ¶ 10, 18-19. While AT&T contends that this development has no bearing on the settlement and that the relevant review process has already begun, *see* Pl. Opp. at 5-6, the Proposed Intervenors' property interests would be extinguished if the settlement moves forward. Accordingly, the Court concludes that denying the motion will impede the Proposed Intervenors' legal rights.

### E. Adequate Representation

Finally, the intervening party bears the burden of providing that its interests are not adequately represented by the existing parties, but this burden is "minimal." *Keybank Nat'l Ass'n*, 2007 WL 9710295, at *6; *Coleman v. County of Suffolk*, 174 F. Supp. 3d 747, 754 (E.D.N.Y. 2016) (permitting a motion to intervene in order to oppose a motion to seal when the defendant county "represent[ed] the agency as a whole," and the proposed intervenor "represent[ed] the interest of its members"

(citation and quotation marks omitted)), *aff'd*, 685 F. App'x 69 (2d Cir. 2017). The Second Circuit, however has "'demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective,'" meaning there is an "identity of interest." *Sea Tow Servs. Int'l, Inc.*, 2021 WL 327653, at *5 (quoting *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001)). In that instance, the party seeking intervention must rebut the presumption of adequate representation by demonstrating "'collusion, adversity of interest, nonfeasance, or incompetence.'" *Id.* (quoting *Butler, Fitzgerald & Potter*, 250 F.3d at 179).

Applying these standards, the parties to the action do not adequately represent the Proposed Intervenors' interests. Plaintiff seeks to build a cell tower at the Chapel. Defendants seek to act in the public interest and represent the interests of the Town as a whole, *see* Defs.' Opp. at 13-16; Pl. Opp. at 10-12, rather than protecting the Proposed Intervenors' specific property rights. *See Coleman*, 174 F. Supp. 3d at 754 (permitting intervention when the defendant county "represent[ed] the agency as a whole," and the proposed intervenor "represent[ed] the interest of its members" (citation and quotation marks omitted)), *aff'd*, 685 F. App'x 69 (2d Cir. 2017). Accordingly, the Court concludes this element is satisfied and recommends granting the Proposed Intervenors' motion to intervene as of right.

### F. Permissive Intervention

Alternatively, the Proposed Intervenors seek permissive intervention under Fed. R. Civ. P. 24(b). *See* Proposed Intervenors' Mem. at 11-13. Because the Court

19

recommends granting the Proposed Intervenors' motion to intervene as of right and the permissive intervention analysis is informed by the same four factors, it need not reach this argument. *See Certified Multi-Media Solutions, Ltd.*, 2015 WL 5676786, at *6. Nevertheless, and for the sake of a complete record, should intervention as of right be denied, the Court recommends in the alternative that the Proposed Intervenors' motion for permissive intervention be granted for the reasons set forth above.

## IV. CONCLUSION

For the reasons set forth above, the Court recommends granting the Proposed Intervenors' Motion to intervene as of right, or in the alternative for permissive intervention.

## V. OBJECTIONS

A copy of this Report and Recommendation is being served on all parties, including the Proposed Intervenors, by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a); *Ferrer v. Woliver*, 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. 22 Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
     December 1, 2022                 /s/ Steven I. Locke
                                                STEVEN I. LOCKE
                                                United States Magistrate Judge