```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
NEW CINGULAR WIRELESS PCS, LLC
d/b/a AT&T Mobility,
                                          MEMORANDUM & ORDER
              Plaintiff,                  20-CV-3555 (JS)(SIL)

       -against-

THE PLANNING BOARD OF THE TOWN OF
EAST HAMPTON; THE TOWN OF EAST
HAMPTON; THE TOWN OF EAST HAMPTON
ARCHITECTURAL REVIEW BOARD; and
THE TOWN OF EAST HAMPTON BUILDING
DEPARTMENT,

                  Defendants.
-------------------------------X
APPEARANCES
For Plaintiff:      Kenneth J. Wilbur, Esq.
                    Andrew B. Joseph, Esq.
                    Faegre Drinker Biddle & Reath
                    600 Campus Drive
                    Florham Park, New Jersey  07932

For Defendants:     Kelly E. Wright, Esq.
                    Thomas Roy Crouch, Esq.
                    Crouch McWilliams Law Group, PLLC
                    10 Pantigo Road
                    East Hampton, New York  11937

Intervenor          Andrew J. Campanelli, Esq.
Defendants:         Jean Marie Smyth, Esq.
                    Campanelli & Associates, P.C.
                    1757 Merrick Avenue, Suite 204
                    Merrick, New York  11566
```

SEYBERT, District Judge:

SEYBERT, District Judge:

Peter Corbett, Nicole Corbett, Valerie Coster, Karen

Simon, Matthew Sargenti, and Christopher Katsaros (collectively

the "Proposed Intervenors") move to intervene (the "Motion") in this case pursuant to either Federal Rule of Civil Procedure ("Rule") 26(a) or 26(b).  (See Motion, ECF No. 40.)  By Report & Recommendation dated December 1, 2022 (the "R&R"), Magistrate Judge Steven I. Locke recommended the Court grant the Proposed Intervenors' request to intervene as of right, or, in the alternative, grant the Proposed Intervenors' request to intervene permissively.  (See R&R, ECF No. 46, at 11-20.)  For the following reasons, Plaintiff's objections[1] to the R&R are SUSTAINED, the R&R is REJECTED in part, and the Proposed Intervenor Defendants' Motion is DENIED in its entirety.

<u>BACKGROUND</u>

The Court adopts the relevant factual background stated by Magistrate Judge Locke in his R&R, finding that the R&R accurately summarized the relevant facts pertinent to this case, which are incorporated herein.  (See id. at 2-6.)  Similarly, the Court adopts the Magistrate Judge's recitation of the relevant procedural history, which is also incorporated herein.  (See id. at 6-9.)  For the reader's convenience, however, the Court briefly reiterates the following.

---

[1] Within the designated time-period to object to the R&R, Defendants filed a letter joining in Plaintiff's objections without expounding upon them.  (See Defs.' Obj.'s to R&R, ECF No. 48.)  While recognizing that Defendants join in Plaintiff's objections, for convenience when referring to the specific objections, the Court will refer to them as Plaintiff's objections.

I.    Facts[2]

New Cingular Wireless PCS, LLC (the "Plaintiff" or "AT&T") "is a provider of personal wireless services pursuant to licenses issued by the Federal Communications Commission." (Compl., ECF No. 1, ¶ 10.)  The Planning Board of the Town of East Hampton, New York (the "Planning Board"); the Town of East Hampton, New York (the "Town"); the Town of East Hampton Architectural Review Board (the "Architectural Review Board"); and the Town of East Hampton Building Department (the "Building Department" and collectively with the Planning Board, the Town, and the Architectural Board the "Defendants") are each "local government entit[ies] or instrumentalit[ies] thereof duly constituted and established pursuant to New York law."  (Id. ¶ 2-5.)  St. Peter's Chapel (the "Chapel") "is located in the Springs section of East Hampton, a heavily-wooded area consisting of single-family homes." (Id. ¶ 13.)  The Proposed Intervenors "are individual property owners whose respective homes are each situated in close proximity to" the Chapel.  (Campanelli Decl., ECF No. 41, ¶ 22.)

On October 22, 2015, "[t]o remedy a service gap in the Springs section of East Hampton . . . AT&T submitted an application to locate a personal wireless facility at the Chapel." (Id. ¶ 16.)  Since "the Chapel's existing belfry [was] too low to

---

[2] The relevant facts are taken from Plaintiff's Complaint, and where necessary, the parties' respective filings.

provide sufficient height to mount the antennas at the 45 feet above ground level center-line height needed for reliable services in the service gap," Plaintiff "initially proposed to replace the belfry with a new, taller steeple." (Id. ¶ 20.) Plaintiff has received conflicting requests from Defendants with regard the design of the proposed wireless facility. After reviewing the initial application, the Planning Board requested Plaintiff "limit any facility at the Chapel to the height of the existing belfry." (Id. ¶ 22.) "On December 21, 2015, the Architectural Review Board's Vice-Chair" requested "that the antennas be placed within a campanile (a stand-alone bell tower) set back farther from the street." (Id. ¶ 23.) "After reviewing AT&T's revised proposal at a July 3, 2016, meeting, the Planning Board recommended that [Plaintiff] consider three other options: relocate the campanile, consider a shorter steeple, or mount the antennas on a 50-foot-tall pole." (Id. ¶ 25.) "Taking feedback from the Planning Board and Architectural Review Board into account, AT&T submitted an updated and refined application, dated December 15, 2017, for a facility utilizing a campanile on the northern portion of the Chapel property." (Id. at ¶ 28.) "After discussing the application at meetings on February 7, 2018, and February 28, 2018, on March 1, 2018, the Planning Board backtracked . . . and informed AT&T that the Planning Board was unable to form a consensus on a proposed configuration." (Id. at ¶ 29.)

4

In sum, Plaintiff contends that "there have been at least 16 public meetings or hearings of the Boards on [Plaintiff's] application." (Id. ¶ 75.) Ultimately, "[o]n July 22, 2020, the Planning Board" denied Plaintiff's request for a "Special Permit and Site Plan approvals for the Chapel Facility." (Id. ¶ 61.) The present litigation ensued.

II. Procedural History

On August 6, 2020, Plaintiff filed its Complaint against the Defendants, alleging, inter alia, various violations of the Telecommunications Act (the "TCA"). (See generally, Compl. ¶ 76-97.) The Defendants answered the Complaint on September 15, 2020. (Answer, ECF No. 8.) On July 15, 2021, the parties reported to the Court that the matter was settled, and they were in the process of executing an agreement. (See Settlement Status Letter, ECF No. 25.) "All of the interested Town Boards approved the settlement agreement at public sessions of the respective boards, and thereafter, the Settlement Agreement was executed by the representatives of the various boards (on December 17, 21, and 29, for the Planning Board, the Town Board, and Architectural Review Board, respectively)". (Defs.' Opp'n to Mot., ECF No. 37, at 4; see also Pl.'s Opp'n to Mot., ECF No. 38, at 4-5.) The Proposed Intervenors deny that the public sessions took place. (Campanelli Decl. ¶ 9 n.1.)

On February 10, 2022, a proposed Settlement Agreement was submitted for the Court's approval. (Proposed Consent Order, ECF No. 27-1, <u>attached to</u> Letter Regarding Settlement.)   The Proposed Settlement Agreement was approved on February 11, 2022. (<u>See</u> Consent Order, ECF No. 29.)   In short, the Settlement Agreement provides that the Defendants shall provide Plaintiff "all reasonable cooperation and assistance necessary to facilitate AT&T's submission" of materials identified by Defendants as "reasonable and necessary to permit Defendants to review and approve [a] Monopole Facility, and to permit AT&T to construct, operate, and maintain the Monopole Facility."   (<u>Id.</u> at 2.) Alternatively, if any Defendant "fail[s] to grant any variance, approval or permit necessary to construct, operate and maintain the Monopole Facility . . . Defendants shall be deemed to have granted all variances, permits and approvals necessary for construction, operation and maintenance of the Campanile Facility."   (<u>Id.</u>)   Therefore, the practical effect of the Settlement Agreement is that Plaintiff is guaranteed a facility, but the Defendants may choose between a Monopole or Campanile Facility.

On March 21, 2022, the Proposed Intervenors filed a letter motion to intervene.[3] (<u>See</u> Letter Motion to Intervene, ECF

---

[3] The Proposed Intervenors' Notice of Motion was not filed until June 24, 2022.

No. 30.)  Both Plaintiff and all Defendants opposed the Proposed Intervenors' Motion.   This Court referred the Proposed Intervenors' Motion to Magistrate Judge Wicks for decision on April 8, 2022.  (<u>See</u> April 8, 2022 Elec. Order Referring Mot.)   After Magistrate Judge Wicks' recusal on July 11, 2022, the Motion was referred to Magistrate Judge Locke who issued his R&R on December 1, 2022.

   III. <u>Judge Locke's R&R</u>

        In the R&R, after summarizing the material facts and procedural history of the action, Magistrate Judge Locke identified the appropriate Rules which govern intervention as of right under Rule 24(a)(2).  (<u>See</u> R&R at 9-11.)  Specifically, the Magistrate Judge found:

> [a] motion to intervene as of right will be granted where the movant demonstrates: (1) timeliness of the motion; (2) the movant's interest relates to the property or transaction that constitutes the subject of the action; (3) absent intervention, the movant's ability to protect its interest will be impaired or impeded; and (4) the parties to the action do not adequately represent the movant's interest.

(<u>Id.</u> at 10.)  The Magistrate Judge next determined that any "permissive intervention analysis[,]" governed by Rule 24(b), should be "informed by the same four factors considered in connection with motions for intervention as of right."  (<u>Id.</u> at 11.)

7

A. <u>Standing</u>

Before analyzing the enumerated intervention factors, the Magistrate Judge undertook a standing analysis finding that "the Proposed Intervenors have standing to pursue the relief they seek, namely[,] to vindicate economic interests in their properties." (<u>Id.</u> at 12.)  The Magistrate Judge highlighted that the "alleged injury is that the construction of a 50-to-70-foot monopole or campanile in close proximity to their homes will reduce their property values, which is recognized under local zoning rules." (<u>Id.</u>)  Magistrate Judge Locke found this injury to be "imminent" since Plaintiff and Defendants had "entered into a Settlement Agreement which provides that a cell tower will be built at the Chapel whether as a monopole or campanile." (<u>Id.</u>)  Magistrate Judge Locke dismissed Defendants' argument that the Proposed Intervenors' complained-of injury was "speculative," finding the Proposed Intervenors "cite to various studies on this issue and argue that they would further establish the impact on their property values with probative evidence in a motion to vacate the consent order." (<u>Id.</u> at 12-13.)  Additionally, Magistrate Judge Locke stated that "rather than seek relief under the TCA" the Proposed Intervenor Defendants' Answer, Counterclaims and Cross Claims, "demonstrate they seek relief under the local zoning codes specific to a reduction in property values, and this proposed

8

pleading is different from the answer filed by Defendants who asserted no counterclaims." (Id. at 13.)

   B. Timeliness

      Regarding timeliness, Magistrate Judge Locke concluded that "the Proposed Intervenors' motion is timely" because, inter alia, they did not receive notice of the litigation "until they learned of the Settlement Agreement through 'word of mouth.'"[4] (Id. at 14.)  Upon learning of the Settlement Agreement, Magistrate Judge Locke noted that the Proposed Intervenors: (1) "immediately consulted with and retained counsel"; (2) "filed a NYCPLR Article 78 petition in the New York Supreme Court, Suffolk County on March 11, 2022"; and (3) "filed their initial letter motion to intervene in this Court on March 21, 2022."  (Id.)  Magistrate Judge Locke also found that, given Plaintiff's "initial application for the cell tower was ultimately denied by Defendants" it "does not necessarily follow that the proposed intervenors should have intervened when the litigation was filed in August 2020."  (Id.)

      Magistrate Judge Locke next determined that the Proposed Intervenors would be prejudiced if their Motion was denied since their "interests [would be] extinguished, and a cell tower [would]

---

[4] Defendants claim that the Proposed Intervenors had constructive Notice of the Settlement Agreement because "they held public sessions of the respective boards, on December 17, 21, and 23, 2021;" however, Magistrate Judge Locke highlighted that the Proposed Intervenors dispute such meetings took place.  (R&R at 14.)

be built at the Chapel" in accordance with the terms of the Consent Decree.  (Id. at 15.)  He found this prejudice to the Proposed Intervenors outweighed the effect of any delay since "the relief negotiated in the Settlement Agreement may still be obtained, at least in some form."  (Id.)

C. Legal Interest

As to the Proposed Intervenors' legal interest in the transaction, Magistrate Judge Locke first found that while the Proposed Intervenors' aesthetic impact arguments failed, "they also [sought] to protect against potential economic harm to their properties, which are in close proximity to the site of the proposed tower."  (Id. at 16. (emphasis added)).  Specifically, the Magistrate Judge highlighted the Proposed Intervenors' contention that construction of the tower would reduce the values of their properties by "15 to 30 percent."  (Id.)  In support of this argument, the Proposed Intervenors cited "to various studies on this issue and argue[d] that they would further establish the impact on their respective property values with probative evidence in a motion to vacate the consent order."  (Id.)  Accepting the Proposed Intervenors' contentions as true, the Magistrate Judge concluded that this purported injury was "certain rather than contingent" since "the Settlement Agreement provides that either a 50-to-70-foot monopole or campanile will be placed at the Chapel site."  (Id.)

D. <u>Impairment of Legal Interest</u>

In analyzing the third requirement of intervention as of right, Magistrate Judge Locke reasoned that "the Proposed Intervenors' interests, namely their property rights under local zoning rules, are impeded by performance under the Settlement Agreement." (<u>Id.</u> at 17.) This is so, Magistrate Judge Locke concluded, because "[t]he Agreement overrides these rights providing that a 50-to-70-foot cell tower will be built at the Chapel in any scenario." (<u>Id.</u>) Evaluating the Proposed Intervenors' proposed Answer, Counterclaims and Cross Claims, Magistrate Judge Locke found "that denying the motion will impede the Proposed Intervenors' legal rights" reasoning:

> [t]he Proposed Intervenors seek to defend the initial determination of Defendants' denial of AT&T's application and ultimately vacate the Settlement Agreement which overrides their economic property interests. Moreover, the Proposed Intervenors allege that AT&T failed to meet local zoning provisions, and the denial of the application was valid in that they failed to provide evidence to establish the actual location of purported gaps in service and why or how its proposed tower is the best and/or least intrusive means in remedying those gaps. They also argue that the Chapel is recently eligible for inclusion in the State and National registers of Historic Places, which was not contemplated in the Settlement Agreement and inconsistent with local zoning regulations.

(<u>Id.</u> at 17-18.)

E. Adequate Representation

Finally, Magistrate Judge Locke found that, presently, "the parties to the action do not adequately represent the Proposed Intervenors' interests." (Id. at 19.) Specifically, the Magistrate Judge identified that "Plaintiff seeks to build a cell tower at the Chapel[,]" and "Defendants seek to act in the public interest and represent the interests of the Town as a whole "rather than protecting the Proposed Intervenors' specific property rights." (Id.)

F. Permissive Intervention

On the issue of permissive intervention, Magistrate Judge Locke found that since "the Court recommend[ed] granting the Proposed Intervenors' motion to intervene as of right and the permissive intervention analysis is informed by the same four factors, it need not reach this argument." (Id. at 19-20.) "Nevertheless," for "the sake of a complete record," the Magistrate Judge recommended "in the alternative that the Proposed Intervenors' motion . . . be granted" for the same reasons set forth in support of his recommendation that the Proposed Intervenors be permitted intervention as of right. (Id. at 20.)

DISCUSSION

I.   Legal Standards

A. R&R[5]

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3). The district judge must evaluate proper objections de novo; however, where a party "makes only conclusory or general objections, or simply reiterates [the] original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)); Fed. R. Civ. P. 72(b)(3). The Court need

---

[5] "[T]here is authority within the Second Circuit holding that a motion to intervene is dispositive, at least insofar as it is brought as of right under Rule 24(a)[.]" Global Auto, Inc. v. Hitrinov, No. 13-CV-2479, 2021 WL 1220712, at *4 (E.D.N.Y. Mar. 31, 2021) (quoting Madison Stock Transfer, Inc. v. Marine Expl., Inc., No. 15-CV-6394, 2017 WL 383351, at *1 n.2 (E.D.N.Y. Jan. 27, 2017)). As such, notwithstanding this Court's April 8, 2022 Electronic Order referring the Proposed Intervenors' Motion for decision, and out of an abundance of caution, the Court will treat the instant motion as dispositive and review de novo the portions of Magistrate Judge Locke's recommendation to which Plaintiff and Defendants have properly objected. See Stackhouse v. McKnight, 168 F. App'x 464, 467 (2d Cir. 2006) (summary order) (finding that where all parties had not consented to the jurisdiction of the magistrate judge under § 636, that "[the] Magistrate Judge[]'s order denying the motion to intervene was the equivalent of a report and recommendation subject to [the District] Judge[]'s de novo review.").

not review the findings and conclusions to which no proper objection has been made. Thomas v. Arn, 474 U.S. 140, 150 (1985).

## B. Intervention as of Right

To intervene as of right a movant must demonstrate:

(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties.

ExteNet Sys. Inc. v. Vill. of Lake Success, No. 19-CV-3471, 2020 WL 1862948, at *2 (E.D.N.Y. Feb. 21, 2020) (citing MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 389 (2d Cir. 2006)). "Failure to satisfy any one of these requirements is a sufficient ground to deny [intervention]." Id. (quoting Catanzano by Catanzano v. Wing, 103 F.3d 223, 232 (2d Cir. 1996) (emphasis and alteration in original; further citation omitted)).

## C. Permissive Intervention

Pursuant to Rule 24(b) "[o]n timely motion, the Court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. FED. R. CIV. P. 24(b). "Permissive intervention lies within the Court's 'broad discretion,' . . . and in exercising that discretion, the Court 'must consider whether the intervention will

14

unduly delay or prejudice the adjudication of the original parties'
rights.'"   N.Y. SMSA Ltd. P'ship v. Town of Carmel,
No. 19-CV-10793, 2022 WL 12064663, at *3 (S.D.N.Y. Oct. 20, 2022)
(first quoting AT&T Corp. v. Sprint Corp., 407 F.3d 560, 561 (2d
Cir. 2005) then quoting Fed. R. Civ. P. 24(b)(3)).

## II. Analysis

Plaintiff raises three specific objections to Magistrate
Judge Locke's R&R which the Court will review de novo pursuant to
28 U.S.C. § 636(b)(1).  First, Plaintiff argues that Magistrate
Judge Locke's R&R ignores binding Second Circuit authority;
specifically, Plaintiff avers that claims by neighboring property
owners that a wireless facility will devalue their property is an
insufficient basis for intervention under the TCA.  (Pl.'s R&R
Obj.'s, ECF No. 47, at 6-12.)  Second, Plaintiff contends that the
Proposed Intervenors' interests are adequately represented by
Defendants, and, that moreover, Defendants' decision to settle
this matter has no bearing on this analysis.  (Id. at 12-14.)
Finally, Plaintiff argues that "[t]here are . . . no grounds to
grant permissive intervention" under Rule 24(b).  (Id. at 14-15.)

A. <u>The Proposed Intervenors Lack an Interest That Relates to the Property or Transaction Which is the Subject of This Action</u>

Plaintiffs first contend that "[t]he Recommendation accepts, without citing any supporting authority, Movants' bald assertion that an interest in protecting property values is sufficient to support intervention in a TCA Action." (<u>Id.</u> at 8.) Plaintiff brings to the Court's attention numerous cases which it contends support its position. Specifically, Plaintiff highlights that "a party must demonstrate either an interest in the property on which the facility is located or one that is protected by the TCA," and that the Proposed Intervenors' claim that the proposed wireless facility "might impair property values does not affect the intervention analysis." (<u>Id.</u> at 9.) The Proposed Intervenors attempt to distinguish this case law and argue that they have "clearly demonstrated that they have a protectable interest in preventing economic harm to their properties under the local zoning code [and] [i]t is this interest that gives them standing." (Proposed Intervenors' Mem. in Supp. of R&R, ECF No. 50, at 8.) The Proposed Intervenors contend that this "interest [] meets the criteria for intervention as of right." (<u>Id.</u>) On Proposed Intervenors' argument that they have a protectable right under the local zoning code, Plaintiff argues that "[i]t is well-settled in the Second Circuit . . . that zoning statutes and ordinances do not create property rights unless the zoning body has no discretion

16

in the matter and the movant is entitled, as a matter of right, to a specific outcome."  (Pl.'s R&R Obj.'s, at 11-12.)

Here, the Court agrees with Plaintiff that the Proposed Intervenors have not asserted an interest that relates to the property or transaction that is the subject of this action.

Extenet Systems, LLC v. Village of Kings Point is instructive; there, the proposed intervenors sought to intervene in a TCA action asserting they possessed "'substantial interests'" in the wireless facilities (the "small cells") which were the subject of the action.  No.21-CV-5772, 2022 WL 1749200, at *8 (E.D.N.Y. May 31, 2022) aff'd, No. 22-1265, 2023 WL 4044076 (2d Cir. June 16, 2023).  To support their claim, the Village of Kings Point intervenors "submitted . . . letters from certain real estate brokers from the area opining that the installation of small cells in close proximity to the proposed intervenors' homes would result in 'substantial losses in monetary value.'"  Id.  The real estate brokers estimated that "the homes [would] lose value by ten to twenty-five percent and will stay in the market for substantially longer because fewer buyers are interested in homes located near wireless facilities."  Id.  Notwithstanding the

<u>Village of Kings Point</u> intervenors' devaluation arguments[6], Judge

Matsumoto found:

> [C]ritically, the proposed intervenors do not have a cognizable interest relating to the property or transaction that is the subject of this action.  The property at issue consists of thirty-one small cell sites within the Village and ExteNet's application for a special exception permit, which do not belong to the proposed intervenors.  This point is not disputed. . . .  Furthermore, the transaction at issue is the Village's disposition of ExteNet's application for a special exception permit.  The proposed intervenors do not have a cognizable interest in the properties or in ExteNet's application.

<u>Id.</u> at *9.

_____

[6] The <u>Village of Kings Point</u> court further found that the intervenors' proffered evidence of property devaluation was unconvincing, stating:

> other than the number of years of experience of the brokers who authored the letters, no evidentiary support is given for the conclusory assertions that the market value of the proposed intervenors' homes will decrease by as much as twenty-five percent. No supporting data, not even a single example of a home that declined in value as a result of the installation of a small cell in "close proximity," is proffered. Accordingly, the Court concludes that the brokers' unsupported assertions do not support a finding that the proposed intervenors' homes will suffer substantial, or any, losses in monetary value as a result of the proposed small cells being located over 100 feet away.

2022 WL 1749200, at *9.

Like the proposed intervenors in <u>Village of Kings Point</u>, the Proposed Intervenors here have no cognizable interest in the property at issue, <u>i.e.</u>, the Chapel.  Furthermore, the transaction at issue is the Defendants' disposition of Plaintiff's application to construct a wireless facility at the Chapel, to which, again, the Proposed Intervenors have not demonstrated a cognizable interest.  Indeed, the Proposed Intervenors explicitly acknowledge that they have no property interest in the Chapel, or in AT&T's application.  (<u>See</u> Proposed Intervenors' Mem. in Supp. of R&R, at 8).  Like the movants in <u>Village of Kings Point</u>, the Proposed Intervenors here are merely neighboring property owners concerned that installation of the wireless tower in close proximity to their various properties may potentially devalue those properties.[7] Consequently, the Proposed Intervenors cannot demonstrate the second required element for intervention as of right, <u>i.e.</u>, an interest relating to the property or transaction that is the

_____

[7] The Court notes that while Judge Locke accepted the Proposed Intervenors' conclusory contention that the planned wireless facility would devalue their properties by between 15-30 percent, this Court finds that the Proposed Intervenors' fear in this regard, is speculatory and contingent on many factors.  <u>Accord</u> <u>Village of Lake Success</u>, 2020 WL 1862948, at *2 n.2.  The cherrypicked studies the Proposed Intervenors submitted in support of their contention, and their promise to provide probative evidence if their motion is successful is unavailing given that the cited studies do not pertain to the specific geographical market in which the Proposed Intervenors reside.

subject of this action.[8]  Accord Vill. of Lake Success, 2020 WL
1862948, at *2 (accepting as true proposed intervenors' contention
that installation of the wireless nodes at issue would devalue
their properties but nonetheless finding "[a]s a threshold matter,
the movants' contention that they have a cognizable interest
relating to the property or transaction that is the subject of
this action does not bear much scrutiny[,]" since "[t]he property
at issue . . . consists of the thirteen sites on public land within
the village where [plaintiff] seeks to install its nodes [and]
[t]he transaction at issue is the Board's disposition of
[plaintiff's] petition under applicable law"); Omnipoint Commc'ns,
Inc. v. City of White Plains, 202 F.R.D. 402, 403 (S.D.N.Y. 2001)
(finding that owner of property adjacent to proposed site for a
wireless facility had "no interest in the property or transaction
that [was] the subject of th[e] action" sufficient to warrant

---

[8] While the Second Circuit has not explicitly addressed whether
abutting neighbors may intervene in a TCA case on the basis that
the proposed wireless facility will devalue their property, the
issue was briefed by the parties in Backus v. Town of Charlotte.
See Appellants' Brief, 2003 WL 24154490, at *26 (arguing that the
appellant residents should be permitted to intervene where they
had, inter alia, "an interest in protecting . . . their property
values); see also Plaintiffs-Appellees' Brief, 2003 WL 24154492,
at *27 (refuting appellants' argument regarding the potential
devaluation of the residents' property values by highlighting that
"not only is there no factual evidence to support the claim, but
there is . . . no legal support for it [either]").  In Backus, the
Second Circuit ultimately dismissed the appellant-residents'
appeal, holding that "[t]he Residents have failed to allege any
injury that related to enforcement of the TCA".  75 Fed. App'x
820, 821 (2d Cir. 2003).

intervention in plaintiff's claim against municipality asserting violation of TCA).

The Proposed Intervenors' argument that "the source of" their "right to protect the value of their property" comes from the local zoning ordinance and not the TCA is unavailing.  The Proposed Intervenors rely upon, inter alia, Wolpe v. Poretsky, for the proposition that "in lawsuits contesting the application of zoning restrictions to a particular parcel of land, owners of adjoining parcels are entitled to intervene under Rule 24(a)(2)." However, Wolpe is distinguishable from the facts of this case since the Wolpe court "allowed adjoining property owners to intervene as of right in an action challenging a zoning order that would necessarily determine the movants' control of their own property." Vill. of Lake Success, 2020 WL 1862948, at *2 n.2.  No such considerations are implicated here.[9]  Neither the Proposed Intervenors, nor the R&R cites any Second Circuit precedent that stands for the proposition that a property owner may intervene in

---

[9] The Proposed Intervenors also rely upon Industrial Communications and Electronics, Inc. v. Town of Alton, N.H., a non-binding First Circuit decision.  646 F.3d 76 (1st Cir. 2011).  However, the court in Town of Alton did not analyze the issue of intervention under Rule 24 because the intervenors in that case had already, at some point previously, intervened with permission of the Court. Id. at 78.  Moreover, in holding that the intervenors could establish injury in fact, the court found that the intervenors had a "legal interest under state law," specifically a New Hampshire statute which allowed challenges to a zoning board's variance decision. Id. at 80.  Here, the Proposed Intervenors do not identify any similar or corollary New York state statute.

a TCA action, pursuant to Rule 24, to protect themselves from potential property devaluation caused by installation of a nearby wireless facility.   This Court, likewise, has found no such precedent.

Since the Court finds that the Proposed Intervenors lack an interest in the property or transaction that is the subject of this action, and since failure to demonstrate any of the four factors under Rule 24(a) is fatal to a claim of intervention as of right, the Court need not resolve Plaintiff's adequate representation objection.   See Petersville Sleigh Ltd. v. Schmidt, 124 F.R.D. 67, 74 n.2 (S.D.N.Y. 1989) ("failure to satisfy any of the four requirements is fatal to intervention [as] of right"); accord Mastercard Int'l Inc., 471 F.3d at 389.

B. The Court Declines to Exercise its Discretion and Allow the Proposed Intervenors to Intervene Permissibly

While Magistrate Judge Locke recommended in the alternative that, should the Court deny the Proposed Intervenors' request for intervention as of right, the Proposed Intervenors should be permitted to intervene permissibly, the Court agrees with Plaintiff that such an outcome would be prejudicial to the original parties.

Here, the Municipal Defendants and Plaintiff have been attempting to resolve the wireless gap in East Hampton since 2015. Prior to the Proposed Intervenors' Motion, a negotiated and agreed

resolution to this eight-year dispute had finally been reached. To unravel this negotiated-for resolution based upon conjectural fears that the wireless facility may decrease neighboring property values would only serve to prejudice the original parties.  See Town of Carmel, 2022 WL 12064663, at *3 (declining to allow proposed intervenors to intervene permissibly where the original parties had negotiated a settlement two years previously as it would be prejudicial to the original parties "by delaying the resolution that was negotiated and agreed upon").  See also United States v. Pitney Bowes, Inc., 25 F.3d 66, 72-73 (2d Cir. 1994) ("jeopardizing a settlement agreement causes prejudice to the existing parties to a lawsuit.")  Moreover, the issue of undue delay is particularly important in this case, given that, by statute, adjudication of Plaintiff's claims is "to be heard and decided 'on an expedited basis.'"  Vill. of Kings Point, 2023 WL 4044076, at *3 (citing 47 U.S.C. § 332(c)(7)(B)(v)).

## CONCLUSION

For the stated reasons, Plaintiff's objection that the Proposed Intervenors lack an interest in the property or transaction that is the subject of the action is SUSTAINED. Likewise, the Court finds that allowing permissive intervention in this case would be prejudicial to the original parties and risks causing undue delay.  Consequently, Plaintiff's objections are SUSTAINED, the R&R is REJECTED in part, with the Court adopting

23

the factual and procedural backgrounds articulated in the R&R, and the Proposed Intervenors' Motion to Intervene (ECF No. 40) is DENIED.

                                        SO ORDERED.

                                        /s/ JOANNA SEYBERT
                                        Joanna Seybert, U.S.D.J.

Dated: August 30, 2023
       Central Islip, New York